# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MONUMENTAL LIFE INSURANCE COMPANY, an Iowa corporation | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| ILLINOIS MUTUAL LIFE INSURANCE COMPANY, an Illinois company, JACK BUTTACAVOLI, an individual, STAN VALLE, an individual, GLADSTON DUSSARD, an individual, LESLIE HUGHEY, an individual, and CHARLENE McCOY, an individual, | ) ) ) ) ) ) ) ) | Case No. 1:11-cv-08909 |
| Defendants. | ) ) ) | |

## DEFENDANT ILLINOIS MUTUAL INSURANCE COMPANY'S ANSWER TO VERIFIED COMPLAINT

Defendant Illinois Mutual Life Insurance Company ("Illinois Mutual"), by and through its undersigned attorneys, hereby submits its Answer and Affirmative Defenses ("Answer") to Plaintiff Monumental Life Insurance Company's ("Monumental") Verified Complaint for Injunctive and other Relief ("Complaint") as follows:

## NATURE OF THE ACTION

1.      This is an action for breach of contract, breach of fiduciary duty, tortious interference with contract, tortious interference with prospective economic advantage, and civil conspiracy. Monumental seeks permanent injunctive relief, in addition to other damages.

**ANSWER:** Illinois Mutual denies it breached any contract or fiduciary duty or tortuously interfered with any contract or prospective economic advantage. Illinois Mutual further denies that it was party to any civil conspiracy. Illinois Mutual admits that Monumental seeks

permanent injunctive relief, in addition to other damages, but denies that Monumental is entitled to such relief.

2. Defendants Buttacavoli, Valle, Dussard, Hughey and McCoy (collectively, the "Individual Defendants") are all former employees of Monumental who are currently working for Illinois Mutual, a Monumental competitor.

**ANSWER:** Illinois Mutual admits that the Individual Defendants are former employees of Monumental Insurance Company and that Monumental Insurance Company is a competitor. Illinois Mutual denies that it has employed these individuals, but admits that it has appointed these individuals as independent agents, meaning they are free to conduct business with other insurance companies. Any remaining allegations are denied.

3. The Individual Defendants all participated in a scheme in which they began selling insurance policies for Illinois Mutual while still employed with Monumental and began soliciting other Monumental employees to do the same. These actions were in willful and intentional violation of their employment agreements with Monumental and the fiduciary duties they owed as employees of Monumental.

**ANSWER:** The allegations in this paragraph are not directed at Illinois Mutual. Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

4. Further, after leaving Monumental, the Individual Defendants have continued to willfully and intentionally violate their post-employment obligations owing to Monumental by soliciting Monumental customers, replacing Monumental life insurance policies, soliciting Monumental employees, and misusing Monumental's confidential information.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph, except that Illinois Mutual states that Illinois Mutual has since March 2011 instituted a policy not to accept insurance applications which state the applicant will be replacing Monumental Life Insurance policies and has prior to the filing of this civil action instituted a policy not to accept insurance

from Monumental policyholders seeking to purchase additional insurance coverage, with limited exceptions.

5.     Accordingly, Monumental brings this action to halt and remedy the past and continuing unlawful conduct of its former employees in diverting Monumental's business and employees to a competitor. Further, Monumental seeks to halt and remedy Defendant Illinois Mutual's unlawful conduct in interfering with Monumental's business relationships with its customers and employees and interfering with the post-employment contractual obligations that its former employees owe to Monumental.

**ANSWER:**     Illinois Mutual denies that it has engaged in any unlawful conduct or interfered with valid post-employment contractual obligations of the former employees of Monumental. Illinois Mutual further denies that Monumental is entitled to any relief whatsoever against Illinois Mutual.

## THE PARTIES

6.     Monumental is an Iowa corporation with its principal place of business in Baltimore, Maryland.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

7.     Illinois Mutual is an Illinois company based in Peoria, Illinois.

**ANSWER:**     Admitted.

8.     Buttacavoli is an individual and citizen of Illinois who is domiciled at, and resides at, 2879 North Arlington Heights Road, Arlington Heights, Illinois 60004.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

9.     Valle is an individual and citizen of Illinois who is domiciled at, and resides at, 8613 North Osceola Avenue, Niles, Illinois 60714.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

10.     Dussard is an individual and citizen of Illinois who is domiciled at, and resides at, 550 Dundee Avenue, Elgin, Illinois 60120.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

11.     Hughey is an individual and citizen of Illinois who is domiciled at, and resides at, 315 East 173rd Place, South Holland, Illinois 60473.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

12.     McCoy is an individual and citizen of Illinois who is domiciled at, and resides at, 3204 Sunnyside Avenue, Rockford, Illinois 61101.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

## JURISDICTION AND VENUE

13.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.00 excluding interest and costs.

**ANSWER:**     Denied that Monumental has properly pleaded diversity citizenship as it has not alleged that Illinois Mutual is a corporation incorporated under the laws of the State of Illinois, instead alleging that it is a "company." Further the allegations are denied for lack of knowledge for the reasons based upon the answers to Paragraphs 6, 8-12.

14.     This Court has personal jurisdiction over all Defendants because all are residents of the State of Illinois.

**ANSWER:**     Admitted that Illinois Mutual is resident of the State of Illinois. Illinois Mutual denies the remaining allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

15.     Venue is proper in this district under 28 U.S.C. § 1391(a) because all of the Individual Defendants reside in this district, and a substantial part of the events or omissions giving rise to Monumental's claims occurred in this district.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

## EVENTS GIVING RISE TO THIS ACTION

### Monumental's Business & Customer Relationships

16. Monumental is an insurance company that provides life and health insurance products plus value-added services to its customers through a network of offices throughout the country.

**ANSWER:** Illinois Mutual admits that Monumental is an insurance company that provides life and health insurance products, but Illinois Mutual denies the remaining allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

17. Monumental is dedicated to maintaining long-term customer relationships and providing quality long-term services to its customers and, in order to effectuate that mission, Monumental invests substantial time and money recruiting and training sales agents and sales managers who are tasked with developing and maintaining Monumental's customer relationships.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

18. Specifically, Monumental sales agents and managers develop Monumental's relationships with its customers by meeting with customers, conducting a thorough personal needs analysis, recommending and providing adequate life insurance coverage, and delivering policy benefits and claims checks.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

19. In addition, sales agents are responsible for providing continuing customer service on each customer account, which requires the agent to ensure that premium payments are kept current, to continually assess the adequacy of a customer's existing coverage and advise when coverage changes are necessary, and to advise when changes to policy documents are required, e.g. changes to beneficiaries or name changes.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

20.     Monumental sales agents and managers develop relationships with their customers that span many years, and Monumental customers generally have a great deal of trust and confidence in their assigned agent. These Monumental customers rely on their agents to advise them on their insurance needs and to explain the details of their coverage.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

21.     Monumental employs its sales agents and sales managers in what is referred to in the insurance industry as a "captive" arrangement, which means that agents and managers are only permitted to sell insurance products for Monumental and not for any other company.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph, but Illinois

Mutual admits that Monumental's agents sold insurance for Monumental as distinct from the

independent agents  arrangement used by Illinois Mutual.

22.     When a sales agent begins working for Monumental, he or she is assigned a set of existing Monumental customer accounts. Monumental sales agents receive renewal commissions on each policy within their assigned set of accounts that is retained each month. In addition, sales agents receive commissions on any new policies they bring to Monumental.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

23.     Though Monumental sales agents develop and service their assigned customer accounts, the agents do not "own" the customer accounts they are assigned. Rather, sales agents develop and maintain these customer relationships on behalf of Monumental, and under the terms of Monumental's standard Agent's Agreement, sales agents are not permitted to solicit Monumental policyholders or replace existing Monumental policies for a period of two years after their employment with Monumental terminates. Instead, when a Monumental sales agent's employment terminates, the agent is eligible to participate in Monumental's pension plan.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

## Monumental's Efforts to Protect Its Customer Relationships

24.     Because Monumental develops long-term, near-permanent relationships with its customers, Monumental employs active measures to protect those relationships.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

25. In the course of their employment, Monumental sales agents, sales managers, and district managers are given access to Monumental's confidential customer data including customers' names, social security numbers, contact information, policy numbers, policy amounts, loans taken out on each policy, and the loan amounts for which each policy is eligible.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

26. In order to protect the integrity of this confidential customer data, Monumental restricts access to its confidential information so that different levels of employees are granted different levels of access to customer data.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

27. Sales agents are only given access to confidential customer data for their assigned customers. Sales managers are given access to confidential customer data for all policies assigned to the sales agents they supervise. District managers are given the highest level of access to confidential customer data and can access information for all customers within the district office they manage.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

28. Further, Monumental protects its confidential customer data by requiring employees to return any and all confidential information in their possession upon the employee's separation. When an employee's employment with Monumental terminates, any passwords the employee may have been given to access confidential information are immediately disconnected.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

29. Finally, Monumental protects its confidential customer information by requiring agents, sales managers, and district managers to sign agreements that prohibit the use or disclosure of confidential company information unless required in the course of employment with Monumental. Those agreements also contain restrictive covenants that impose certain post-employment obligations on the employee that are intended to protect Monumental's confidential information and its customer relationships.

**ANSWER:**  Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

30.  By accepting employment with Monumental and executing a Monumental employment agreement, Monumental's agents and managers agree to be bound by the following narrowly-tailored restrictive covenants:

> "For a period of two (2) years from the date of the termination of my employment with the Company, I shall not directly or indirectly do any of the following, or aid or assist others to do any of the following, in any county or counties serviced by the Company's office(s) in which I have ever been assigned:
>
> 1.  Solicit, sell, or attempt to solicit or sell life, health, and/or annuities insurance to Company policyholders in existence on the date of my termination and those policyholders whose insurance with the Company has terminated within two (2) years prior to my termination.
>
> 2.  Contact any Company policyholder for the purpose of inducing or attempting to induce such policyholder to replace, cancel, lapse, fail to renew, cash surrender, or take a loan against such policyholder's policy with the Company.
>
> 3.  Induce or attempt to induce any personnel to terminate their employment with the Company, and/or to sell life, health, and/or annuities insurance for any other company.
>
> 4.  Retain in my possession, photostat, or otherwise copy any of the Company's records, supplies, materials, and forms including, but not limited to, forms for loans, cash surrenders, request for change in policy, change in beneficiary, policyholder payment or policy information (whether printed, computerized, or electronically produced) or other Company property or equipment."

**ANSWER:**  Illinois Mutual denies that the restrictive covenant is narrowly tailored.  To the extent this language is attached in the exhibits to the Complaint, Illinois Mutual admits its use. Otherwise, Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

31.  In addition, each agent and manager agrees to the following confidentiality provision:

"I understand that my position is one of trust and confidence because of my access to confidential business information belonging to the Company. Unless required by the Company in connection with my employment or with the Company's express consent, I will not, either during the term of my employment with the Company or afterwards, directly or indirectly, use or disclose for my own benefit or the benefit of another individual any of the Company's confidential business information, whether or not the information is acquired, learned, attained, or developed by me alone or in conjunction with others. I make the same pledge with regard to the confidential information of the Company's customers, or others with whom the Company has a business relationship."

**ANSWER:**   To the extent this language is attached in the exhibits to the Complaint, Illinois Mutual admits its use.  Otherwise, Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

32.   Lastly, by executing an agreement with Monumental, each sales agent and manager acknowledges that "the purpose of the restrictions contained in [the agreement] are for the protection of [Monumental] in that, during the period of employment and/or appointment, I will have access to all or some of [Monumental]'s trade secrets and confidential client and associate information; and use of such information to interfere with [Monumental]'s customer and/or associate relationships would be unfair and detrimental to [Monumental]."

**ANSWER:**   To the extent this language is attached in the exhibits to the Complaint, Illinois Mutual admits its use.  Otherwise, Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

## Monumental's Loss of Saks Agents and Managers in 2011

33.   Since January 2011, approximately 24 Monumental employees, including three managers and 21 sales agents, from three Monumental offices located in the Chicago area, have either resigned from Monumental or been terminated with cause and are now employed by Illinois Mutual, a direct competitor of Monumental.

**ANSWER:**   Denied that Illinois Mutual employs any of the individual Defendants, but admitted that certain independent agents appointed by Illinois Mutual indicated that they had previously sold Monumental insurance policies.  With respect to the remainder of the allegations,

9

Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

34.     The three district offices involved are the district offices located in Rosemont, Illinois (the "Chicago North" office), Hillside, Illinois ("Hillside"), and Oak Forest, Illinois ("Oak Forest").

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

35.     This mass departure of Monumental employees began after the district manager for the Chicago North office, Buttacavoli, retired from Monumental effective December 31, 2010.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph, but admitted that Buttacovaoli retired on December 31, 2010.

36.     Shortly after announcing his retirement, Buttacavoli met with Senior Regional Vice President, Michael Abdella ("Abdella"), his director supervisor, and stated that he was retiring, but that he was not leaving the insurance industry and that he would "not go quietly."

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

37.     In the months following Buttacavoli's departure, an increasing number of sales agents and managers from Monumental's Chicago North, Hillside and Oak Forest offices began to resign to work for Illinois Mutual or were terminated for cause when Monumental discovered that they were already working for Illinois Mutual.

**ANSWER:**     Denied that these individuals work for Illinois Mutual, as they are independent agents.  Further answering, Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

38.     Many of these Monumental sales agents and managers who have either resigned or been terminated for cause, including Valle, Dussard, Hughey, and McCoy, were selling Illinois Mutual policies while they were employed by Monumental, in direct violation of their agreements with Monumental.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

39.    Upon information and belief, Buttacavoli and other unknown former Monumental sales agents who have resigned or been terminated for cause in 2011 were also selling Illinois Mutual policies while still working for Monumental, in direct violation of their agreements with Monumental.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

40.    Further, many of Monumental's former sales agents and managers who have either resigned or been terminated for cause, including Buttacavoli, Valle, Dussard, Hughey and McCoy, have replaced or attempted to replace, and are continuing to replace and attempt to replace, Monumental policies in direct violation of their agreements with Monumental.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

41.    Upon information and belief, other unknown former Monumental sales agents who have either resigned or been terminated for cause in 2011 have also replaced or attempted to replace, and are continuing to replace and attempt to replace, Monumental policies in direct violation of their agreements with Monumental.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

42.    Lastly, some of Monumental's former sales agents and managers, including Valle and Dussard, have solicited or attempted to solicit other Monumental agents and managers to work for Illinois Mutual, in direct violation of their agreements with Monumental.

**ANSWER:**    Denied that  these individuals work for Illinois Mutual, as they are independent

agents.  Further answering, Illinois Mutual denies the allegations for lack of knowledge and

information to form a belief as to the truth or falsity of the allegations contained in this

paragraph.

43.    Upon information and belief, Buttacavoli and other unknown former Monumental agents and managers have also solicited or attempted to solicit Monumental employees to work for Illinois Mutual.

**ANSWER:**    Denied that these individuals work for Illinois Mutual or have been solicited to "work for" Illinois Mutual, as these are or would be independent agents and not employees. Further answering, Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

### Monumental's Chicago North Office

44.    The largest district office in Illinois is the Chicago North office. This office, in prior years, has generated approximately $10 million in insurance premium payments.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

45.    Since January 2011, approximately 13 employees from the Chicago North office have ceased working for Monumental and gone to work for Illinois Mutual, including the district manager, Buttacavoli, one sales manager, Valle, and eleven sales agents, including Hughey and McCoy.

**ANSWER:**    Denied that these individuals work for Illinois Mutual, as they are independent agents.  Further answering, Illinois Mutual admits that it has appointed Buttacavoli, Valle, Hughey, McCoy and others as independent agents.  With respect to the remainder of this paragraph, Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

### Defendant Jack Buttacavoli

46.    Buttacavoli began his employment with Monumental in 1990 when Monumental acquired Washington National Insurance Company of Evanston, Illinois ("Washington National") where Buttacavoli was previously employed.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

47.    From 1990 to 1994, Buttacavoli worked as a sales agent in Monumental's Chicago North office. In that position, Buttacavoli was responsible for selling Monumental life insurance and annuity products and developing and maintaining relationships with existing and prospective Monumental customers.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

48. Buttacavoli entered into various Agent's Agreements with Monumental during the course of his employment as a sales agent which set forth the terms of Buttacavoli's employment as a sales agent with Monumental.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

49. In addition, each Agent's Agreement contained restrictive covenants which prevented Buttacavoli from, among other things, soliciting existing Monumental policyholders, soliciting Monumental employees, and retaining any Monumental information or records for a period of two years after his employment with Monumental terminated.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

50. In August 1994, Buttacavoli was promoted to the position of district manager of the Chicago North office, and he served in this position until his retirement in December 2010.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

51. As district manager, Buttacavoli was responsible for overseeing the Chicago North office which included managing all sales managers and sales agents, recruiting, hiring and training sales agents and managers, and servicing Monumental customers. Buttacavoli entered into several District Manager's Agreements that set forth the terms of his employment as a District Manager at Monumental.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

52. Most recently, Buttacavoli entered into a District Manager's Agreement with Monumental on April 1, 2002 that set forth the terms of his employment. A true and correct copy of Buttacavoli's April 1, 2002 District Manager's Agreement is attached as Exhibit A.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

53.     Buttacavoli's District Manager's Agreement contained all of the narrowly-tailored restrictive covenants set forth above in paragraphs 30-32.

**ANSWER:**     Illinois Mutual denies that the restrictive covenants are narrowly tailored.  Illinois

Mutual denies the allegations for lack of knowledge and information to form a belief as to the

truth or falsity of the allegations contained in this paragraph.

54.     As a district manager, Buttacavoli was given access to highly confidential and trade secret information belonging to Monumental. Specifically, Buttacavoli was given full access to all customer data for the Chicago North office, including customers' names, social security numbers, contact information, policy numbers, policy amounts, loans taken out on each policy, and the loan amounts for which each policy was eligible. In addition, Buttacavoli was given access to personnel information for all employees in the Chicago North office.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

55.     In late 2010, Buttacavoli formally announced that he was retiring from Monumental effective December 31, 2010.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph, but Illinois

Mutual admits that it was aware that Buttacavoli was retiring from Monumental effective

December 31, 2010.

56.     In a subsequent meeting with his direct supervisor, Abdella, Buttacavoli stated that he was not planning to leave the insurance industry and that he would "not go quietly."

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

57.     In January 2011, after he had officially retired from his district manager position, Buttacavoli applied for a sales associate position with Monumental.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

58.     At Monumental, the sales associate position is a non-salary sales position that is structured and compensated differently than Monumental's agent and manager positions. Sales

associates are only paid commissions on sales of life insurance and annuity products and are not prohibited from working for other competing insurers.

**ANSWER:**   Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

59.    Buttacavoli was hired for a sales associate position in January 2011 and executed a Sales Associate Contract with Monumental on January 11, 2011. A true and correct copy of Buttacavoli's January 2011 Sales Associate Contract is attached as Exhibit B.

**ANSWER:**   Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

60.    The standard Monumental Sales Associate Contract contains certain narrowly tailored restrictive covenants that are intended to protect the confidential and proprietary information to which sales associates are given access.

**ANSWER:**   Illinois Mutual denies that the restrictive covenant is narrowly tailored.  Illinois

Mutual denies the allegations for lack of knowledge and information to form a belief as to the

truth or falsity of the allegations contained in this paragraph.

61.    Specifically, by executing his January 2011 Sales Associate Contract, Buttacavoli agreed to the following narrowly-tailored restrictive covenants: "While this Contract is in effect, and for a period of two (2) years immediately following this Contract's termination, [I] will not, directly or indirectly, engage in any marketing activities with the intent or effect of replacing in-force business produced under this Contract or other business of [Monumental], unless specifically authorized in writing to do so."

**ANSWER:**   Illinois Mutual denies that the restrictive covenants are narrowly tailored.  Illinois

Mutual admits that a document containing this language is attached as an exhibit to the

Complaint.   As to the remaining allegations of this paragraph, Illinois Mutual denies the

allegations for lack of knowledge and information to form a belief as to the truth or falsity of the

allegations contained in this paragraph.

62.    Both prior to his retirement from Monumental in December 2010, and after his retirement, Buttacavoli has engaged in unlawful conduct in willful and intentional violation of his contractual obligations owing to Monumental and the fiduciary duty that he owed as a Monumental employee.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

63. Upon information and belief, Buttacavoli began selling policies for Illinois Mutual and replacing Monumental policies while still employed as a district manager at Monumental.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph, but denied

that Illinois Mutual at that time was aware of any restriction which would have made his actions

in selling policies for Illinois Mutual would have been unlawful or in breach of any contract.

64. Further, after his retirement in December 2010, Buttacavoli continued to replace and attempted to replace Monumental policies.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

65. After Buttacavoli's retirement in December 2010, a significant number of policies in the Chicago North office lapsed, were canceled, or cash surrendered. Chicago North sales agents and managers began contacting their customers to inquire why they were not retaining their insurance with Monumental and were consistently told that these policyholders had switched their policies over to Illinois Mutual. A significant number of customers reported that they had been solicited to move their business to Illinois Mutual by Buttacavoli.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

66. After discovering that Buttacavoli was replacing Monumental policies in direct violation of his obligations to Monumental, Abdella terminated Buttacavoli's existing Monumental Sales Associate Contract in June 2011.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

67. After his Sales Associate Contract was terminated in June 2011, Buttacavoli continued to owe post-employment obligations to Monumental not to replace Monumental policies for a period of two years.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

68.    However, after Abdella terminated his Sales Associate Contract in June 2011, Buttacavoli has continued to replace and attempt to replace Monumental policies, both directly and indirectly, in direct violation of his post-employment obligations owing to Monumental.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

69.    On September 7, 2011, Buttacavoli visited the home of Grace Syslo, an existing Monumental policyholder, to discuss replacing her existing policy with an Illinois Mutual policy. Buttacavoli left his Illinois Mutual business card with Ms. Syslo, which advertises him as a General Agent for Illinois Mutual at the J.A. Buttacavoli Agency located at 646 S. Arthur Avenue, Arlington Heights, Illinois 60005.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

70.    The next day, on September 8, 2011, Ms. Syslo reported the visit to her Monumental sales agent, Angela Morrison, and sent Ms. Morrison a copy of Buttacavoli's Illinois Mutual business card. A true and correct copy of the internal non-compete incident report that Monumental prepared regarding this incident is attached as Exhibit C.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

71.    Further, in September 2011, Illinois Mutual agents visited the home of Patricia Sullivan, an existing Monumental policyholder, and attempted to persuade Ms. Sullivan to replace her policy with an Illinois Mutual policy. Ms. Sullivan reported the visit to her Monumental agent and stated that the Illinois Mutual agents were pushy and told her she would "lose everything" with Monumental because the company had been sold. The Illinois Mutual agents left a copy of Buttacavoli's business card with Ms. Sullivan before leaving. A true and correct copy of the internal non-compete incident report that Monumental prepared regarding this incident is attached as Exhibit D.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

72.    Upon information and belief, Buttacavoli also solicited Monumental agents and managers to either sell Illinois Mutual policies while employed by Monumental or to leave

Monumental to work for Illinois Mutual while Buttacavoli was still employed as a district manager at Monumental, in direct violation of his District Manager's Agreement.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

73. On September 9, 2011, Christopher Wilhelm, the Assistant General Counsel and Assistant Vice President of Monumental, sent a cease-and-desist letter to Buttacavoli's counsel, Anthony Masciopinto, reminding Buttacavoli and his counsel of the obligations contained in his Sales Associate's Contract and stating that Monumental would seek legal recourse against Buttacavoli and Illinois Mutual if Buttacavoli did not cease his replacement activities. A true and correct copy of Monumental's September 9, 2011 letter to Buttacavoli's counsel is attached as Exhibit E.

**ANSWER:** Admitted.

74. A copy of Monumental's September 9, 2011 letter to Buttacavoli's counsel was also sent to M.A. McCord, the President of Illinois Mutual.

**ANSWER:** Admitted.

75. Monumental has not received any response from Buttacavoli or Illinois Mutual to its September 9, 2011 cease-and-desist letter.

**ANSWER:** Illinois Mutual did not respond to Monumental with respect to the September 9, 2011 letter on which it was copied, but did take proactive steps in response to receipt of the letter. Illinois Mutual denies the remainder of the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

76. Upon information and belief, Buttacavoli continues to solicit Monumental customers and replace or attempt to replace Monumental policies in violation of the post-employment obligations he owes Monumental under his Sales Associate Contract.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

**Defendant Stan Valle**

77. Valle was employed with Monumental from 1993 to January 18, 2011.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

78.    Valle first held the position of sales agent in the Chicago North office from 1993 to February 2000. In February 2000, Valle was promoted to the position of sales manager in the Chicago office.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

79.    Then, from January 2008 to January 2010, Valle served as a branch manager and district manager of Monumental's Chicago Central office. This office has since closed.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

80.    In January 2010, Valle returned to the Chicago North office as a senior agent. He was then promoted to the position of sales manager on September 1, 2010 and held that position until his resignation on January 18, 2011.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

81.    In his most recent position with Monumental as a sales manager in the Chicago North office, Valle was responsible for supervising, recruiting and training sales agents and doing joint field sales work with the agents who reported to him. At the Chicago North office, seven sales agents reported directly to Valle.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

82.    On September 1, 2010, Valle entered into a Sales Manager's Agreement which set forth the terms of his employment as a sales manager. A true and correct copy of Valle's September 2010 Sales Manager's Agreement is attached as Exhibit F.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph, but admitted that Exhibit F purports to be such an agreement.

83. Valle's Sales Manager's Agreement contains the narrowly-tailored restrictive covenants set forth above in paragraphs 30-32.

**ANSWER:** Illinois Mutual denies that the restrictive covenant is narrowly tailored. Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph, but admitted that Exhibit F purports to be such an agreement.

84. As a sales manager, Valle was given access to highly confidential and trade secret information belonging to Monumental. Specifically, Valle was given access to all customer data for all customers assigned to the sales agents that he managed, including social security numbers, contact information, policy numbers, policy amounts, loans taken out on each policy, and the loan amounts for which each policy was eligible.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

85. On January 18, 2011, Valle submitted his resignation to Monumental.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

86. Since Valle resigned, Monumental has discovered that Valle was selling policies for Illinois Mutual and replacing Monumental policies prior to his resignation, that he has been replacing and attempting to replace Monumental policies with Illinois Mutual policies since his resignation, and that he has solicited and attempted to solicit Monumental sales agents to work for Illinois Mutual.

**ANSWER:** Illinois Mutual states that Valle is an independent agent and indicated when he applied as an agent he stated he was employed by Monumental. Further answering, Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

87. As with Buttacavoli, Monumental first became aware that Valle was replacing and attempting to replace Monumental policies when policyholders began reporting to sales agents and sales managers in the Chicago North office that they were not retaining their Monumental policies because they had taken out Illinois Mutual policies and that Valle was their Illinois Mutual agent.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

88.    For example, in early 2011, Samih Halim, a sales agent in the Chicago North office, spoke with one of his Monumental customers, Christine Beecham, who had recently cash surrendered her Monumental policy. Ms. Beecham informed Mr. Halim that Valle had visited her home and told her that Monumental was changing the way that it services its accounts, that Monumental agents were no longer going to do home visits, and that Monumental was switching to an office-based service model. Valle also told Ms. Beecham that she should cash in her Monumental policy to purchase an Illinois Mutual policy.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

89.    Mr. Halim reported this incident to Nour Aly, the new district manager of the Chicago Office, who directed Mr. Halim to contact all of his customers who had allowed their policies to lapse or who had canceled or cash surrendered their policies to determine whether they were solicited by an Illinois Mutual agent.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

90.    Mr. Halim subsequently spoke with another customer that Valle had solicited, Genora Delaney, and obtained a signed statement from Ms. Delaney on August 29, 2011 regarding Valle's solicitation activities. A true and correct copy of Ms. Delaney's August 29, 2011 statement is attached as Exhibit G.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

91.    Ms. Delaney indicated in her signed statement that Valle had visited her home and convinced her to cash out her Monumental policy by telling her that she could get the same level of coverage for less money through Illinois Mutual.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

92.    Mr. Halim explained to Ms. Delaney that her new Illinois Mutual policy did not give her the same level of coverage as her Monumental policy, and she agreed to reinstate her Monumental policy. However, a few days later, Ms. Delaney contacted Mr. Halim again and stated that Valle had visited her again and convinced her to cancel her policy with Monumental.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

93. Further, upon information and belief, Valle has solicited Monumental sales agents to work for Illinois Mutual, in direct violation of his agreement with Monumental.

**ANSWER:** Illinois Mutual denies that sales agents work for Illinois Mutual as they are independent agents. Further answering, Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

94. On September 1, 2011, Christopher Wilhelm, Assistant General Counsel and Assistant Vice President of Monumental, sent a cease-and-desist letter to Valle reminding him of the obligations contained in his Sales Manager's Agreement and stating that Monumental would seek legal recourse against Valle and Illinois Mutual if Valle did not cease his replacement activities. A true and correct copy of Monumental's September 1, 2011 letter to Valle is attached as Exhibit H.

**ANSWER:** Admitted.

95. A copy of Monumental's September 1, 2011 letter to Valle was also sent to M.A. McCord, the President of Illinois Mutual.

**ANSWER:** Admitted.

96. Monumental has not received any response from Valle or Illinois Mutual to its September 1, 2011 cease-and-desist letter.

**ANSWER:** Illinois Mutual did not respond to Monumental with respect to the September 1, 2011 letter on which it was copied, but did take proactive steps in response to receipt of the letter. Illinois Mutual denies the remainder of the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

97. Even after Monumental's September 1, 2011 cease-and-desist letter, Valle has continued to engage in unlawful replacement activities.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

98.    In September 2011, Valle visited the home of Annie Johnson, an existing Monumental policyholder, and told her that Monumental was undergoing certain changes, that Monumental agents were no longer providing their clients with the right services, and that he could sell her better insurance at a cheaper price. Valle also told Ms. Johnson during that visit that he was still working for Monumental.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

99.    Ms. Johnson reported Valle's visit to her Monumental agent and signed a statement describing the incident. A true and correct copy of the internal non-compete incident report that Monumental prepared regarding this incident, including a signed statement from Ms. Johnson, is attached as Exhibit I.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

100.    Upon information and belief, Valle continues to engage in replacement activities in violation of the post-employment obligations he owes to Monumental under his Sales Manager's Agreement.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

**Defendant Leslie Hughey**

101.    Defendant Leslie Hughey ("Hughey") was hired at Monumental on February 18, 2002 as a sales agent in the Chicago North office.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

102.    At that time, Hughey entered into an Agent's Agreement with Monumental that set forth the terms of Hughey's employment as a sales agent. A true and correct copy of Hughey's 2002 Agent's Agreement is attached as Exhibit J.

**ANSWER:**    Illinois Mutual admits that Monumental has attached a copy of an agreement

which purports to be the Agent's Agreement.  Further answering, Illinois Mutual denies the

allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

103.    Hughey's Agent's Agreement contains the narrowly-tailored restrictive covenants set forth above in paragraphs 30-32.

**ANSWER:**    Illinois Mutual denies that the restrictive covenants are narrowly tailored. Further answering, Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

104.    As a Monumental sales agent, Hughey had access to highly confidential and proprietary information relating to his Monumental customers, including social security numbers, contact information, policy numbers, policy amounts, loans taken out on each policy, and the loan amounts for which each policy was eligible.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

105.    In early 2011, Hughey formally announced that he planned to retire from Monumental.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

106.    Shortly thereafter, on March 1, 2011, Aly discovered that Hughey was selling policies for Illinois Mutual.

**ANSWER:**    Illinois Mutual admits that Hughey is an independent agent selling policies for Illinois Mutual. Further answering, Illinois Mutual denies the remaining allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

107.    Aly terminated Hughey for cause effective March 1, 2011 for violating the terms of his Monumental Agent's Agreement.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

108.    Since Hughey was terminated, Monumental policyholders have reported to sales agents and managers of the Chicago North office that Hughey is attempting to replace their existing Monumental policies with Illinois Mutual policies.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

109.    On September 1, 2011, Christopher Wilhelm, Assistant General Counsel and Assistant Vice President of Monumental, sent a cease-and-desist letter to Hughey reminding him of the obligations contained in his Agent's Agreement and stating that Monumental would seek legal recourse against Hughey and Illinois Mutual if Hughey did not cease his replacement activities. A true and correct copy of Monumental's September 1, 2011 letter to Hughey is attached as Exhibit K.

**ANSWER:**    Admitted.

110.    A copy of Monumental's September 1, 2011 letter to Hughey was also sent to M.A. McCord, the President of Illinois Mutual.

**ANSWER:**    Admitted.

111.    Monumental has not received any response from Hughey or Illinois Mutual to its September 1, 2011 cease-and-desist letter.

**ANSWER:**    Illinois Mutual did not respond to Monumental with respect to the September 1,

2011 letter on which it was copied, but did take proactive steps in response to receipt of the

letter.    Illinois Mutual denies the remainder of the allegations for lack of knowledge and

information to form a belief as to the truth or falsity of the allegations contained in this

paragraph.

112.    Upon information and belief, Hughey continues to engage in replacement activities in violation of the post-employment obligations he owes to Monumental under the terms of his Agent's Agreement.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

**Defendant Charlene McCoy**

113.    Defendant Charlene McCoy ("McCoy") was employed as a sales agent in the Chicago North office from April 1990 to March 1, 2011.

25

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

114. McCoy was previously employed with Washington National and transitioned over to Monumental after it acquired Washington National in 1990.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

115. McCoy entered into an Agent's Agreement with Monumental on January 6, 1995 that set forth the terms of her employment as a sales agent. A true and correct copy of McCoy's 1995 Agent's Agreement is attached as Exhibit L.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

116. In addition, McCoy's Agent's Agreement contains the narrowly-tailored restrictive covenants set forth above in paragraphs 30-32.

**ANSWER:** Illinois Mutual denies that the restrictive covenants are narrowly tailored. Further answering, Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

117. As a Monumental sales agent, McCoy had access to highly confidential and proprietary information relating to her Monumental customers, including social security numbers, contact information, policy numbers, policy amounts, loans taken out on each policy, and loan amounts possible for each policy.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

118. On March 1, 2011, Aly discovered that McCoy was selling policies for Illinois Mutual.

**ANSWER:** Illinois Mutual admits that McCoy is an independent agent selling policies for Illinois Mutual. Further answering, Illinois Mutual denies the remaining allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

119.    Aly terminated McCoy for cause effective March 1, 2011 for violating the terms of her Monumental Agent's Agreement.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

120.    Since McCoy was terminated, Monumental policyholders have reported to sales agents and managers of the Chicago North office that McCoy is attempting to replace their existing Monumental policies with Illinois Mutual policies.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

121.    On September 1, 2011, Christopher Wilhelm, Assistant General Counsel and Assistant Vice President of Monumental, sent a cease-and-desist letter to McCoy reminding her of the obligations contained in her Agent's Agreement and stating that Monumental would seek legal recourse against McCoy and Illinois Mutual if McCoy did not cease her replacement activities. A true and correct copy of Monumental's September 1, 2011 letter to McCoy is attached as Exhibit M.

**ANSWER:**    Admitted.

122.    A copy of Monumental's September 1, 2011 letter to McCoy was also sent to M.A. McCord, the President of Illinois Mutual.

**ANSWER:**    Admitted.

123.    Monumental has not received any response from McCoy or Illinois Mutual to its September 1, 2011 cease-and-desist letter.

**ANSWER:**    Illinois Mutual did not respond to Monumental with respect to the September 1,

2011 letter on which it was copied, but did take proactive steps in response to receipt of the

letter.    Illinois Mutual denies the remainder of the allegations for lack of knowledge and

information to form a belief as to the truth or falsity of the allegations contained in this

paragraph.

124.    Even after Monumental's September 1, 2011 cease-and-desist letter, McCoy has continued to attempt to replace Monumental policies.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

125. On September 7, 2011, McCoy visited the home of a Monumental policyholder, Melody Doane, and told Ms. Doane that she was no longer insured with Monumental but with a different insurance company. McCoy told Ms. Doane that she would return the next day to collect her payment and give her some forms to sign. Ms. Doane then reported this incident to her Monumental sales agent. A true and correct copy of the internal non-compete incident report that Monumental prepared regarding this incident is attached as Exhibit N.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

126. Upon information and belief, McCoy continues to engage in replacement activities in violation of the post-employment obligations that she owes Monumental under her Agent's Agreement.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

### Monumental's Hillside Office

127. Since January 2011, approximately 10 employees have left Monumental's Hillside office and are now employed by Illinois Mutual. These ten employees include one former sales manager, Dussard, and nine former sales agents.

**ANSWER:** Illinois Mutual denies that Dussard and other unnamed former sales agents are employed by Illinois Mutual, but admit that Dussard is an independent agent selling insurance for Illinois Mutual. Illinois Mutual denies the remaining allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

### Defendant Gladston Dussard

128. Dussard was employed by Monumental from 2001 to September 14, 2011.

**ANSWER:**  Illinois Mutual admits that Dussard was employed by Monumental, but denies the remaining allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

129.  From November 2001 to November 2006, Dussard was employed as a sales agent in the Hillside office. In that position, Dussard was responsible for selling Monumental life insurance and annuity products and developing and maintaining relationships with existing and prospective Monumental customers.

**ANSWER:**  Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

130.  In November 2006, Dussard was promoted to a sales manager position with Monumental's Hillside office. As a sales manager, Dussard was responsible for supervising, recruiting and training sales agents and doing joint field sales work with the agents who reported to him.

**ANSWER:**  Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

131.  As a sales manager, Dussard was given access to highly confidential and trade secret information belonging to Monumental. Specifically, Dussard was given access to all customer data for all customers assigned to the sales agents that he managed, including social security numbers, contact information, policy numbers, policy amounts, loans taken out on each policy, and the loan amounts for which each policy was eligible.

**ANSWER:**  Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

132.  Dussard entered into two Agent's Agreements with Monumental during the course of his employment on November 6, 2001 and September 24, 2004 that governed the terms of his employment with Monumental. A true and correct copy of Dussard's 2004 Agent's Agreement is attached as Exhibit 0.

**ANSWER:**  Illinois Mutual admits that Monumental has attached a copy of an agreement which purports to be the Agent's Agreement.  Further answering, Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

133.    Dussard's 2004 Agent's Agreement contains the restrictive covenants set forth above in paragraphs 15-17.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

134.    In February 2011, Dussard sold a policy for Illinois Mutual while he was employed by Monumental, in violation of the terms of his 2004 Agent's Agreement.

**ANSWER:**    Illinois Mutual admits that Dussard sold a policy written by Illinois Mutual, but denies knowledge of his Agent's Agreement at that time and denies the remaining allegations.

135.    At that time, the district manager of the Hillside office, Terry Lavela, discovered the incident and took disciplinary action against Dussard.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

136.    Specifically, Mr. Lavela reported to his direct supervisor, Abdella, that he completed a "summary of discussion" which is the first step in Monumental's formal disciplinary process. At that time, Mr. Lavela assured Abdella that the matter had been taken care of.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

137.    Several months later, in June 2011, Abdella terminated Mr. Lavela, the district manager responsible for disciplining Dussard, for insubordination. Mr. Lavela was terminated after an incident in which he was explicitly directed by Abdella to keep a sales agent who had recently been terminated from retaining confidential company records and refused to do so. Mr. Lavela is now listed as an agent on Illinois Mutual's website.

**ANSWER:**    Illinois Mutual admits that Lavella is an independent agent selling insurance for Illinois Mutual. Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

138.    In June 2011, Abdella hired Ronald Wells ("Wells") as the new district manager of the Hillside office.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

139.     Immediately after he assumed the position of district manager of the Hillside office, Wells began hearing reports from agents in the office that Dussard was continuing to sell Illinois Mutual policies and that he wanted to leave Monumental to work for Illinois Mutual.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

140.     In or around the end of August 2011, Wells approached Dussard and asked him whether these rumors were true. Dussard became upset, told Wells that he had already been disciplined earlier in 2011 for selling an Illinois Mutual policy, and assured Wells that there was no truth to the rumors he was hearing.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

141.     Several weeks later, in September 2011, Wells discovered that Dussard was, in fact, continuing to replace Monumental policies with Illinois Mutual policies.

**ANSWER:**     Illinois Mutual denies that in September 2011 it was issuing replacement polices

for Monumental policies.  Further answering, Illinois Mutual denies the allegations for lack of

knowledge and information to form a belief as to the truth or falsity of the allegations contained

in this paragraph.

142.     Wells discovered this information because an anonymous individual left copies of the declaration pages from several recently-issued Illinois Mutual policies under the front door of the Hillside office. The recently-issued Illinois Mutual policies replaced policies that had previously been held with Monumental.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

143.     When Wells found these declaration pages — which indicated that Monumental policies were being replaced by Illinois Mutual policies — he contacted Illinois Mutual and inquired what agent at Illinois Mutual had sold the policies. A representative from Illinois Mutual informed Wells over the phone that Dussard was the Illinois Mutual agent who had sold each replaced policy.

**ANSWER:**     Without specificity or identification as to the Illinois Mutual person who allegedly

spoke on the telephone, Illinois Mutual cannot confirm the truthfulness of this allegations.

Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

144.     After discovering that Dussard was replacing Monumental policies with Illinois Mutual policies, Wells contacted his direct supervisor, Abdella, and informed him of the situation. Abdella authorized Wells to terminate Dussard immediately.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

145.     Wells terminated Dussard for cause effective September 14, 2011 for violating the terms of his 2004 Agent's Agreement by selling Illinois Mutual life insurance policies and replacing existing Monumental policies.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

146.     Since Dussard's termination from Monumental, he has applied for and obtained rental space in the same building as the Hillside office. He and another former sales agent from the Hillside office, Caprice Walker ("Walker"), have set up a business in this rental space that they are calling the "Dussard & Walker Tax Agency."

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

147.     Walker left the Hillside office earlier in 2011 to work for Illinois Mutual.

**ANSWER:**     Illinois Mutual admits that Walker became an independent agent in 2011. Further answering, Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

148.     Dussard and Walker are both currently listed as agents on Illinois Mutual's website.

**ANSWER:**     Admitted.

149.     Since Dussard's termination, Monumental has discovered yet another policy that Dussard sold for Illinois Mutual while still employed at Monumental.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

150.    In early November 2011, Hillside sales agent Juanita Brown visited her customer, Lanitra Harden, who holds several policies with Monumental.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

151.    During that visit, Ms. Harden began asking questions about one of her life insurance policies; however, Ms. Brown was not familiar with the policy Ms. Harden was inquiring about. Ms. Harden showed Ms. Brown a copy of the policy, which was actually an Illinois Mutual policy that Dussard had sold her approximately two years earlier. Ms. Brown explained to Ms. Harden that the policy was not actually issued by Monumental and told Ms. Harden that she could not answer her questions about that policy.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

152.    Further, Dussard has also solicited Monumental sales agents to work for Illinois Mutual, in direct violation of his 2004 Agent's Agreement with Monumental.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

153.    In approximately late September or early October 2011, Dussard solicited Hillside sales agent Juanita Brown to work for Illinois Mutual. Ms. Brown met with Dussard to collect a premium payment on a Monumental life insurance policy held by one of Dussard's relatives. During that meeting, Dussard suggested that Ms. Brown consider working as an independent contractor for Illinois Mutual.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

154.    Dussard attempted to persuade Ms. Brown to work for Illinois Mutual by telling her that she would not have the same reporting requirements and record-keeping duties at Illinois Mutual as she did at Monumental. Ms. Brown told Dussard at that meeting that she would not consider working for Illinois Mutual.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

155.    Upon information and belief, Dussard successfully solicited former Hillside sales agents David Clark ("Clark"), Andre Rodriguez ("Rodriguez"), and Trey Simon ("Simon") to work for Illinois Mutual.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.  Admitted that Clark, Rodriguez and Simon were appointed as independent agents in 2011, but deny that Clark, Rodriguez and Simon work for Illinois Mutual.

156.    Clark, Rodriguez, and Simon have all left their employment with Monumental since September 2011 and are now listed as agents on Illinois Mutual's website.

**ANSWER:**    Admitted, except Illinois Mutual does not know when these individuals left Monumental's employ.

157.    Clark's employment with Monumental terminated in September 2011.  At that time, Clark had not reported in to the office for about a week and had not returned any phone calls from his district manager, Wells. When Wells finally reached him on September 23, 2011, Clark stated that he was interviewing for another job and did not plan to continue reporting to work. At that time, Wells told Clark that if he did not intend to continue reporting to work, he needed to return his company laptop and other company materials.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

158.    Clark came in to the Hillside office and turned in his Monumental laptop approximately one week after his September 23, 2011 conversation with Wells. At that time, Clark informed Wells that he was moving on and needed to "see what else was out there."

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

159.    Rodriguez and Simon were terminated for cause effective October 5, 2011. Neither Rodriguez nor Simon had reported to the office for approximately one week, and neither were returning phone calls from their district manager, Wells.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

160.    After Wells submitted their termination paperwork, Rodriguez and Simon came in together and returned their Monumental laptops.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

161.    Rodriguez and Simon are both now listed as agents on Illinois Mutual's website.

**ANSWER:**    Admitted.

162.    On September 26, 2011, Christopher Wilhelm, Assistant General Counsel and Assistant Vice President of Monumental, sent a cease-and-desist letter to Dussard reminding him of the obligations contained in his 2004 Agent's Agreement and stating that Monumental would seek legal recourse against Dussard and Illinois Mutual if Dussard did not cease his replacement activities. A true and copy of Monumental's September 26, 2011 letter to Dussard is attached as Exhibit P.

**ANSWER:**    Admitted.

163.    A copy of Monumental's September 26, 2011 letter to Dussard was also sent to M.A. McCord, the President of Illinois Mutual.

**ANSWER:**    Admitted.

164.    Monumental has not received any response from Dussard or Illinois Mutual to its September 26, 2011 cease-and-desist letter.

**ANSWER:**    Illinois Mutual did not respond to Monumental with respect to the September 26, 2011 letter on which it was copied, but did take proactive steps in response to receipt of the letter.  Illinois Mutual denies the remaining allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

165.    Upon information and belief, Dussard continues to engage in replacement activities in violation of his post-employment obligations owing to Monumental under his 2004 Agent's Agreement.

**ANSWER:**    Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

## COUNT I
## BREACH OF CONTRACT
### Against Buttacavoli, Valle, Dussard, Hughey, and McCoy

166.    Monumental hereby repeats, realleges, and incorporates by reference the allegations which are contained in paragraphs 1 through 165.

**ANSWER:**    Illinois Mutual incorporates its answers to paragraphs 1 through 165 inclusive as its answer to this paragraph.

167.    The agreements that Buttacavoli, Valle, Dussard, Hughey and McCoy entered into with Monumental constitute valid and enforceable contracts.

**ANSWER:**    Count I is directed only at the Individual Defendants.    Accordingly, Illinois Mutual is not required to answer the allegations asserted in this paragraph.

168.    Monumental performed all of the duties and obligations it agreed to and owed Buttacavoli, Valle, Dussard, Hughey, and McCoy under their agreements.

**ANSWER:**    Count I is directed only at the Individual Defendants.    Accordingly, Illinois Mutual is not required to answer the allegations asserted in this paragraph.

169.    The post-employment activity restrictions contained in Buttacavoli's, Valle's, Dussard's, Hughey's and McCoy's agreements are reasonable in both scope and duration, and are necessary to protect Monumental's legitimate protectable interests in its confidential business information, as well as its customer relationships, goodwill and other legitimate business interests.

**ANSWER:**    Count I is directed only at the Individual Defendants.    Accordingly, Illinois Mutual is not required to answer the allegations asserted in this paragraph.

170.    Buttacavoli has breached, and continues to breach, his contractual obligations owing to Monumental by replacing and attempting to replace Monumental policies after his retirement from Monumental.

**ANSWER:**    Count I is directed only at the Individual Defendants.    Accordingly, Illinois Mutual is not required to answer the allegations asserted in this paragraph.

171.    Upon information and belief, Buttacavoli has also breached, and continues to breach, his contractual obligations owing to Monumental by selling Illinois Mutual policies while still employed by Monumental, replacing Monumental policies while still employed by Monumental, and soliciting and attempting to solicit Monumental employees.

**ANSWER:** Count I is directed only at the Individual Defendants. Accordingly, Illinois

Mutual is not required to answer the allegations asserted in this paragraph.

172. Valle has breached, and continues to breach, his contractual obligations owing to Monumental by selling Illinois Mutual policies while still employed by Monumental, replacing Monumental policies while still employed by Monumental, and replacing and attempting to replace Monumental policies after his resignation from Monumental.

**ANSWER:** Count I is directed only at the Individual Defendants. Accordingly, Illinois

Mutual is not required to answer the allegations asserted in this paragraph.

173. Upon information and belief, Valle has also breached his contractual obligations owing to Monumental by soliciting and attempting to solicit Monumental employees.

**ANSWER:** Count I is directed only at the Individual Defendants. Accordingly, Illinois

Mutual is not required to answer the allegations asserted in this paragraph.

174. Dussard has breached, and continues to breach, his contractual obligations owing to Monumental by selling Illinois Mutual policies while still employed by Monumental, replacing Monumental policies while still employed by Monumental, replacing and attempting to replace Monumental policies after his termination from Monumental, and soliciting and attempting to solicit Monumental employees.

**ANSWER:** Count I is directed only at the Individual Defendants. Accordingly, Illinois

Mutual is not required to answer the allegations asserted in this paragraph.

175. Hughey has breached, and continues to breach, his contractual obligations owing to Monumental by selling Illinois Mutual policies while still employed by Monumental, replacing Monumental policies while still employed by Monumental, and, upon information and belief, by replacing and attempting to replace Monumental policies after resigning from Monumental.

**ANSWER:** Count I is directed only at the Individual Defendants. Accordingly, Illinois

Mutual is not required to answer the allegations asserted in this paragraph.

176. McCoy has breached, and continues to breach, her contractual obligations owing to Monumental by selling Illinois Mutual policies while still employed by Monumental, replacing Monumental policies while still employed by Monumental, and replacing and attempting to replace Monumental policies after resigning from Monumental.

**ANSWER:** Count I is directed only at the Individual Defendants. Accordingly, Illinois Mutual is not required to answer the allegations asserted in this paragraph.

177. In addition, Buttacavoli, Valle, Dussard, Hughey and McCoy breached, and upon information and belief continue to breach, their contractual obligations owing to Monumental by misusing Monumental's confidential and proprietary information.

**ANSWER:** Count I is directed only at the Individual Defendants. Accordingly, Illinois Mutual is not required to answer the allegations asserted in this paragraph.

178. As a result of Defendants' breaches of contract, Monumental has been irreparably injured, and it continues to face irreparable injury. Monumental is threatened with losing the value of its confidential and proprietary information and certain employee and customer relationships, along with income and goodwill, for which a remedy at law is inadequate. Accordingly, Defendants must be enjoined and restrained by Order of this Court. To the extent a remedy at law is adequate, Monumental seeks actual, incidental, compensatory, punitive and consequential damages, along with its reasonable attorneys' fees and interest.

**ANSWER:** Count I is directed only at the Individual Defendants. Accordingly, Illinois Mutual is not required to answer the allegations asserted in this paragraph.

## COUNT II
## BREACH OF FIDUCIARY DUTY
### Against Buttacavoli, Valle, Dussard, Hughey, and McCoy

179. Monumental hereby repeats, realleges, and incorporates by reference the allegations which are contained in paragraphs 1 through 178.

**ANSWER:** Illinois Mutual incorporates its answers to paragraphs 1 through 178 as its answer to this paragraph.

180. As a district manager and sales associate, Buttacavoli owed Monumental a fiduciary duty.

**ANSWER:** Count II is directed only at the Individual Defendants. Accordingly, Illinois Mutual is not required to answer the allegations asserted in this paragraph.

181. As sales managers, Valle and Dussard owed Monumental a fiduciary duty.

**ANSWER:** Count II is directed only at the Individual Defendants. Accordingly, Illinois Mutual is not required to answer the allegations asserted in this paragraph.

182.    As sales agents, Hughey and McCoy owed Monumental a fiduciary duty.

**ANSWER:**    Count II is directed only at the Individual Defendants.    Accordingly, Illinois

Mutual is not required to answer the allegations asserted in this paragraph.

183.    This fiduciary duty included, among other things, a duty not to misappropriate business and business opportunities, a duty not to solicit, directly or indirectly, employees for employment with competing businesses, a duty of loyalty not to be deceitful and a duty generally to not do anything on behalf of a competing business while employed by Monumental.

**ANSWER:**    Count II is directed only at the Individual Defendants.    Accordingly, Illinois

Mutual is not required to answer the allegations asserted in this paragraph.

184.    Buttacavoli breached his fiduciary duty to Monumental by, upon information and belief, selling policies for a competing insurance company while still employed by Monumental, replacing Monumental policies while still employed by Monumental, and soliciting Monumental employees to work for a competing insurance company.

**ANSWER:**    Count II is directed only at the Individual Defendants.    Accordingly, Illinois

Mutual is not required to answer the allegations asserted in this paragraph.

185.    Valle breached his fiduciary duty to Monumental by selling policies for a competing insurance company while still employed by Monumental, replacing Monumental policies while still employed by Monumental, and, upon information and belief, soliciting Monumental employees to work for a competing insurance company.

**ANSWER:**    Count II is directed only at the Individual Defendants.    Accordingly, Illinois

Mutual is not required to answer the allegations asserted in this paragraph.

186.    Dussard breached his fiduciary duty to Monumental by selling policies for a competing insurance company while still employed by Monumental, replacing Monumental policies while still employed by Monumental, and soliciting Monumental employees to work for a competing insurance company.

**ANSWER:**    Count II is directed only at the Individual Defendants.    Accordingly, Illinois

Mutual is not required to answer the allegations asserted in this paragraph.

187.    Hughey breached his fiduciary duty to Monumental by selling policies for a competing insurance company while still employed by Monumental and replacing Monumental policies while still employed by Monumental.

**ANSWER:**    Count II is directed only at the Individual Defendants.    Accordingly, Illinois

Mutual is not required to answer the allegations asserted in this paragraph.

188.    McCoy breached her fiduciary duty to Monumental by selling policies for a competing insurance company while still employed by Monumental and replacing Monumental policies while still employed by Monumental.

**ANSWER:**    Count II is directed only at the Individual Defendants.    Accordingly, Illinois

Mutual is not required to answer the allegations asserted in this paragraph.

189.    During the period of their employment with Monumental in which Buttacavoli, Valle, Dussard, Hughey and McCoy were breaching their fiduciary duties, they were not entitled to any compensation from Monumental. Accordingly, Buttacavoli, Valle, Dussard, Hughey and McCoy should be required to return to Monumental all compensation paid to them during their time of breach, in addition to other relief.

**ANSWER:**    Count II is directed only at the Individual Defendants.    Accordingly, Illinois

Mutual is not required to answer the allegations asserted in this paragraph.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACT
### Against Illinois Mutual Insurance Company

190.    Monumental hereby repeats, realleges, and incorporates by reference the allegations which are contained in paragraphs 1 through 189.

**ANSWER:**    Illinois Mutual incorporates its answers to paragraphs 1 through 189 as its answer

to this paragraph.

191.    As set forth above, the Individual Defendants' agreements with Monumental are valid and enforceable contracts. The post-employment activity covenants, confidentiality covenants and other provisions contained in those agreements are reasonable in scope and duration and are reasonably necessary to protect Monumental's legitimate protectable interests in its long-standing, well established and valuable customer relationships and its confidential information, as well as its goodwill.

**ANSWER:**    Denied.

192.    Upon information and belief, Illinois Mutual was fully aware of the Individual Defendants' agreements with Monumental prior to hiring them.

**ANSWER:**    Denied.

193.    Further, to the extent Illinois Mutual was not aware prior to hiring the Individual Defendants, Illinois Mutual was made aware of the Individual Defendants' agreements with Monumental when Monumental sent copies of the cease-and-desist letters it had issued to each Individual Defendant to Illinois Mutual's president in September 2011.

**ANSWER:**    Denied; further answering Monumental did not send copies of the alleged

Individual Defendants' Agreements to Illinois Mutual with these letters.

194.    Despite having knowledge of the Individual Defendants' agreements, Illinois Mutual intentionally induced, permitted or incentivized the Individual Defendants to violate their contractual obligations owing to Monumental, without justification, in an effort to capitalize on the Individual Defendants' wrongful conduct in soliciting Monumental customers and employees.

**ANSWER:**    Denied.

195.    Further, despite having knowledge of the Individual Defendants' agreements and the Individual Defendants' breaches of their obligations under those agreements, Illinois Mutual has intentionally continued to employ the Individual Defendants and has continued to induce, permit, or incentivize the Individual Defendants to violate their contractual obligations owing to Monumental, without justification, in an effort to capitalize on the Individual Defendants' wrongful conduct in soliciting Monumental customers and employees.

**ANSWER:**    Denied.

196.    Upon information and belief, Illinois Mutual's intentional interference was malicious, unjustified and accomplished through wrongful means, including but not limited to, inducing, aiding or abetting current and former Monumental employees to breach contracts with Monumental and otherwise violate the law.

**ANSWER:**    Denied.

197.    As a result of Illinois Mutual's intentional interference, Monumental has suffered irreparable and other significant injuries.

**ANSWER:**    Denied.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE**
**ECONOMIC ADVANTAGE: MONUMENTAL'S WORKFORCE**
**Against Illinois Mutual, Buttacavoli, Valle, Dussard**

198.    Monumental hereby repeats, realleges, and incorporates by reference the allegations which are contained in paragraphs 1 through 197.

**ANSWER:**     Illinois Mutual incorporates its answers to paragraphs 1 through 197 as its answer to paragraph 198.

199.     Until the events giving rise to this action, Monumental had maintained valid relationships, or the expectancy of relationships, with its employees and maintained the intellectual capital contained within its work force through training and experience. Monumental had the reasonable expectation that these relationships and its intellectual capital would continue and would not be unjustifiably disrupted.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

200.     Because Illinois Mutual is a competitor of Monumental, it was and remains aware of these relationships and/or expectancies.

**ANSWER:**     Denied.

201.     Notwithstanding its knowledge of the existence of these relationships and expectancies, Illinois Mutual intentionally and unjustifiably caused employees to leave Monumental.

**ANSWER:**     Denied.

202.     Because Defendants Buttacavoli, Valle and Dussard were previously employed with Monumental in managerial positions, they were and remain aware of, these relationships and/or expectancies.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

203.     Notwithstanding his knowledge of the existence of these relationships and expectancies, Dussard intentionally and unjustifiably caused employees to leave Monumental.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

204.     Upon information and belief, notwithstanding their knowledge of the existence of these relationships and expectancies, Buttacavoli and Valle intentionally and unjustifiably caused employees to leave Monumental.

**ANSWER:**     Illinois Mutual denies the allegations for lack of knowledge and information to form a belief as to the truth or falsity of the allegations contained in this paragraph.

42

205. As a result of Defendants' tortious interference with Monumental's employee relationships, Monumental has been injured and faces irreparable injury. Monumental is threatened with losing additional employees, its competitive advantage and goodwill in amounts which may be impossible to determine, unless Defendants are permanently enjoined and restrained by order of this Court.

**ANSWER:** Denied.

## COUNT V
## TORTIOUS INTERFERENCE WITH PROSPECTIVE
## ECONOMIC ADVANTAGE: MONUMENTAL'S CUSTOMERS
### Against Illinois Mutual, Buttacavoli, Valle, Dussard, Hughey, and McCoy

206. Monumental hereby repeats, realleges, and incorporates by reference the allegations which are contained in paragraphs 1 through 205.

**ANSWER:** Illinois Mutual incorporates its answers to paragraphs 1 through 205 as it answer

to this paragraph.

207. Until the events giving rise to this action, Monumental had maintained valid business relationships, or the expectancy of business relationships, with its customers and/or prospective customers. Monumental had the reasonable expectation that these relationships and prospective relationships would continue and would not be unjustifiably disrupted.

**ANSWER:** Illinois Mutual denies the allegations for lack of knowledge and information to

form a belief as to the truth or falsity of the allegations contained in this paragraph.

208. Because Illinois Mutual is a competitor of Monumental, it was and remains aware of, these relationships and/or expectancies.

**ANSWER:** Denied.

209. Notwithstanding its knowledge of the existence of these relationships and expectancies, Illinois Mutual intentionally and unjustifiably interfered with Monumental's business relationships with its customers and/or prospective customers by inducing, permitting or incentivizing the Individual Defendants to solicit Monumental customers to leave Monumental and by replacing Monumental policies with Illinois Mutual policies.

**ANSWER:** Denied.

210. Because the Individual Defendants were previously employed by Monumental, they were and remain aware of, these relationships and/or expectancies.

**ANSWER:** Denied.

211. Notwithstanding their knowledge of the existence of these relationships and expectancies, the Individual Defendants intentionally and unjustifiably interfered with Monumental's business relationships with its customers and/or prospective customers by soliciting Monumental customers to leave Monumental and replacing Monumental policies with Illinois Mutual policies.

**ANSWER:** Denied.

212. As a result of the Individual Defendants' tortious interference with Monumental's business relationships with its customers and/or prospective customers, Monumental has been injured and faces irreparable injury. Monumental is threatened with losing customers, its competitive advantage and goodwill in amounts which may be impossible to determine, unless Defendants are permanently enjoined and restrained by order of this Court.

**ANSWER:** Denied.

**COUNT VI**
**CIVIL CONSPIRACY**
**Against Buttacavoli, Valle, Dussard, Hughey, and McCoy**

213. Monumental hereby repeats, realleges, and incorporates by reference the allegations which are contained in paragraphs 1 through 212.

**ANSWER:** Count VI is directed only at the Individual Defendants. Accordingly, Illinois Mutual is not required to answer the allegations asserted in this paragraph.

214. The Individual Defendants agreed, conspired, and acted in concert with each other to engage in an unlawful scheme to use confidential information obtained through their positions as managers and agents of Monumental to sell insurance policies for a competitor while still employed by Monumental, replace Monumental policies while employed by Monumental, to continue replacing Monumental policies after their employment with Monumental, and to solicit other Monumental employees to engage in the unlawful scheme as well, in violation of their agreements with Monumental and the fiduciary duties they owed as Monumental employees.

**ANSWER:** Count VI is directed only at the Individual Defendants. Accordingly, Illinois Mutual is not required to answer the allegations asserted in this paragraph.

215. The Individual Defendants engaged in the overt acts described above in furtherance of this unlawful scheme.

**ANSWER:** Count VI is directed only at the Individual Defendants. Accordingly, Illinois Mutual is not required to answer the allegations asserted in this paragraph.

## AFFIRMATIVE DEFENSES

Defendant asserts the following additional defenses. In further answer to Plaintiff's Complaint, and by way of additional defenses, Defendant avers as follows:

### First Affirmative Defense

Illinois Revised Statute 215 ILCS 5/236 prohibits discrimination by Illinois insurance companies among applicants for life insurance of the same class and equal expectation of life. This is the public policy of the State of Illinois as embodied in its statutes. Monumental's claim that Illinois Mutual should discriminate against applicants for life insurance by refusing to provide life insurance solely because the applicant is or during the past two years was an insured of Monumental, when Illinois Mutual would accept an insurance application of another person of the same class and same life expectancy, would violate the public policy of Illinois as embodied in its anti-discrimination statutes. Therefore, as to Illinois Mutual, the claim that Illinois Mutual cannot accept such applicants as policyholders because of alleged restrictive covenants between Monumental and its former employees who are independent insurance agents is contrary to public policy and therefore null, void and of no effect.

### Second Affirmative Defense

Illinois Mutual, which is a competitor of Monumental, has a qualified privilege to compete for business with Monumental without being held liable for tortious interference with prospective economic advantage as alleged in Count IV where, as here, Illinois Mutual's competitive activities were not improper or unlawful.

### Third Affirmative Defense

Monumental failed to mitigate its damages by failing to properly inform Illinois Mutual of the employment agreements it complains of in this case.

WHEREFORE Defendant Illinois Mutual Life Insurance Company respectfully requests that judgment be entered in Defendant's favor and against Plaintiff and that Defendant be granted such other and further relief in its favor as is deemed just.

Dated: February 10, 2012

Respectfully submitted,

/s/ Michael M. Conway
Michael M. Conway (# 0506788)
Rebecca R. Hanson (# 6289672)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Phone: 312.832.4500
Fax: 312.832.4700

*Attorneys for Defendant Illinois Mutual Life Insurance Company*

## CERTIFICATE OF SERVICE

I, Michael M. Conway, an attorney, hereby certify that on February 10, 2012 I caused a true and correct copy of **ILLINOIS MUTUAL LIFE INSURANCE COMPANY'S ANSWER TO VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF** to be served on the following attorneys of record by filing with the Court's ECF system:

Daniel F. Lanciloti, Esq.
Elizabeth S. Ralph, Esq.
Kavitha Janardhan, Esq.
Seyfarth Shaw LLP
131 South Dearborn Street, Suite 2400
Chicago, IL 60603

*Attorneys for Plaintiff Monumental Life Insurance Company*

Anthony J. Masciopinto
Larry J. Lipka
Kulwin, Masciopinto & Kulwin, LLP
161 N. Clark Street
Chicago, IL 60601

*Attorneys for Defendants Jack Buttacavoli, Charlene McCoy, Gladston Dussard, and Leslie Hughey*

Marcos Reilly
Hinshaw & Culbertson
222 N. LaSalle Street, Suite 300
Chicago, IL 60601

*Attorney for Defendant Stan Valle*

/s/ Michael M. Conway