# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **MONUMENTAL LIFE INSURANCE COMPANY**, an Iowa Corporation,<br><br>      **Plaintiff**,<br><br>  v.<br><br>**ILLINOIS MUTUAL LIFE INSURANCE COMPANY**, an Illinois Company; **JACK BUTTACAVOLI**, an Individual; **GLADSTON DUSSARD**, an Individual; **LESLIE HUGHEY**, an Individual; and **CHARLENE McCOY**, an Individual,<br><br>      **Defendants**. | Case No. 11 C 8909<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Jack Buttacavoli's ("Buttacavoli") Motion for Partial Judgment on the Pleadings and Plaintiff Monumental Life Insurance Company's ("Monumental" or "Plaintiff") Motion for Sanctions (contained in its response to Defendant's motion). For the reasons stated herein, both motions are denied.

## I. BACKGROUND

Buttacavoli became a District Manager for Monumental in 2002, signing a District Manager's Agreement (the "Manager's Agreement") at that time. The Manager's Agreement, drafted by Monumental, contained restrictive covenants limiting Buttacavoli's ability to disseminate confidential company information, to work for

competitors and to entice Monumental employees to leave the company. According to Monumental's Complaint, Buttacavoli retired from Monumental on December 31, 2010. However, after his retirement, he again worked for Plaintiff and signed a new agreement (the "Sales Associate Agreement") with Monumental on January 11, 2011. (The record is not crystal clear on whether there was any break in service between his retirement and his work as a Sales Associate.) The Sales Associate Agreement contained restrictive covenants similar to the Manager's Agreement.

Plaintiff fired Buttacavoli in June 2011, allegedly because he was selling Defendant Illinois Mutual Life Insurance Company's policies in violation of the contract. Buttacavoli denies this.

Plaintiff alleges several counts of action against Buttacavoli and other Defendants, but the Motion for Judgment concerns only Defendant Buttacavoli and deals only with Count I of the Complaint. Count I alleges breach of both the Manager's Agreement and the Sales Associate agreement. Specifically, the Complaint alleges Buttacavoli violated the contracts by misusing confidential information while employed and by poaching customers both before and after his employment terminated. Buttacavoli clarified in his Reply that his Motion for Judgment concerns only those alleged violations occurring after his retirement of December 31, 2010.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "a party can move for judgment on the pleadings after the filing of the complaint and answer." *Supreme Laundry Serv., LLC v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008). The Seventh Circuit has held that for purposes of Rule 12(c), the pleadings consist of the "complaint, the answer, and any written instruments attached as exhibits." *Langone v. Miller*, 631 F.Supp.2d 1067, 1070 (N.D. Ill. 2009).

A motion for judgment on the pleadings pursuant to Rule 12(c) is subject to the same standard as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Spearman Industries, Inc. v. St. Paul Fire and Marine Ins. Co.*, 109 F.Supp.2d 905, 906 (N.D. Ill. 2000). This means that the court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.*

A motion for judgment on the pleadings should only be granted where "the moving party demonstrates that there are no material issues of fact to be resolved." *Supreme Laundry*, 521 F.3d at 746.

## III. ANALYSIS

### A. Enforceability of the Manager's Agreement

Buttacavoli argues the post-employment restrictive covenants of the Manager's Agreement do not apply because the contract specifies that it is automatically terminated in the event of

Buttacavoli's retirement. Since the post-employment restrictive covenants have no explicit savings clause indicating they survive the termination of the contract, Buttacavoli argues that the restrictive covenants also terminated upon his retirement. Monumental argues, first, that Buttacavoli did not retire. Second, Monumental argues that even if Buttacavoli did retire, his interpretation would render an entire section of the contract (the post-employment restrictions) meaningless, in contravention of the canons of contract interpretation.

### 1. *Choice of Law*

The Manager's Agreement contains a choice-of-law provision designating Maryland law as the applicable contract law. A district court sitting in Illinois will enforce a contractual choice-of-law provision unless the law to be applied is "repugnant to a strong and fundamental policy of Illinois." *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F.Supp.2d 398, 405-406 (N.D. Ill. 2001). Neither party argues that Maryland law is repugnant to Illinois law, nor do they argue another state's law should govern the contract dispute. The Court thus applies Maryland law.

### 2. *Interpretation of the Contract Term "Retirement"*

The parties argue about the interpretation of the term "retirement" in the District Manager's Agreement. Compl. Ex. 1A., ¶3b. Plaintiff argues Buttacavoli did not retire. Buttacavoli argues that "Plaintiff Monumental's complaint concedes that

Defendant Buttacavoli 'officially retired' from Plaintiff 'effective December 31, 2010.' Ex. 1 (Complaint) ¶¶55, 57, & 170." Def.'s Memo. 3. Although he does not phrase it as such, Buttacavoli essentially argues that the complaint constitutes a judicial admission that retirement occurred and that this admission is binding upon Monumental.

"An admission made in a pleading is a 'judicial admission,' and ordinarily is binding." *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 669 (7th Cir. 2007). The fact that it is binding does not prevent its being withdrawn, if the judge allows the filing of an amended pleading. *Id*. Even if properly superseded by a new complaint, admissions in a previous complaint may nonetheless be used as an evidentiary admission, which can be controverted or explained by the party. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 640 (7th Cir. 2004).

The Court agrees Monumental has made a judicial admission that Buttacavoli retired on December 31, 2010. Moreover, Monumental completely failed to respond to Buttacavoli's argument that Monumental conceded this fact in its Complaint. Nor has Monumental sought to amend its Complaint to retract the concession.

Therefore, Buttacavoli is correct that the contract terminated once he retired, pursuant to Paragraph 3b of the contract, which states "This agreement shall automatically terminate upon my death,

retirement or if I cease to be duly licensed to conduct the business of insurance." Def.'s Mem., Ex. 1A, at 3.

### *3. Whether Post-Employment Restrictions Survived the Contract's Termination Upon Buttacavoli's Retirement*

But that does not end the inquiry. Monumental argues the contract clearly contemplated that, even in the event of Buttacavoli's retirement and the termination of the Manager's Agreement, the post-employment restrictions would survive and continue to be binding. Buttacavoli contends nothing in the contract, which was drafted by Monumental, exempted the restrictive covenants from the termination clause. Because ambiguities should be construed against the drafter, and because Plaintiff could have put a savings clause in the restrictive covenant section, Buttacavoli argues that the plain language of Paragraph 3 releases him from any post-employment obligations.

In addition to Paragraph 3b cited above, the Court finds the following paragraphs relevant. Paragraph 3c states, "The terms of this Agreement shall control my relationship, obligations, and duties to the Company so long as I remain employed by the Company . . . unless the Company shall enter into a new Agreement with me . . ." *Id.*

Paragraph 7a deals with the restrictive covenants and states:

> For a period of two (2) years from the date of
> the termination of my employment with the
> Company, including my voluntary termination of
> employment, I shall not directly or indirectly

>     do any of the following, or aid or assist
>     others to do any of the following . . .

*Id.* at 6. The contract then goes on to prohibit selling or attempting to sell insurance to Monumental's policy holders, inducing employees to terminate their employment with Monumental, or inducing employees to sell other insurers' products.

There is, as far as the Court can gather, no Maryland case directly dealing with survivability of post-employment restrictions that lack a savings clause. However, *Prison Health Services, Inc. v. Baltimore County* arguably favors Buttacavoli's position. In *Prison Health Services*, a contract "continue[d] through 06/30/2005 . . . at which time the County [could have] exercise[d] its option to renew." *Prison Health Servs. v. Baltimore Health Services*, 912 A.2d 56, 58 (Md. Ct. Spec. App. 2006). The county attempted to renew on July 1, 2005, arguing that the "at which time" phrase allowed for a reasonable time period after June 30 in which to renew. The court disagreed.

>     [A]bsent express savings language, it does not
>     make sense that an option to renew a contract,
>     contained in the same contract, which itself
>     has a definite expiration date, could survive
>     that expiration date. The right to renew
>     exists only because the contract grants it,
>     and therefore must expire when the contract
>     expires, unless the contract itself provides
>     that the renewal right survives the contract's
>     expiration.

*Id.* at 64.

On Plaintiff's side of the ledger are Maryland cases that disfavor interpretations that would render provisions within them as having no effect. *See Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 671 (Md. 2009) (refusing to adopt employee's termination "at will" interpretation when the contract contained an express term specifying the agreement's duration); *see also Towson University v. Conte*, 862 A.2d 941, 948 (Md. 2004) (noting that courts construe contracts as a whole and attempt to harmonize separate provisions).

While this Court agrees ambiguities are traditionally construed against the drafter that is not enough to tip the scales in favor of Buttacavoli. *See Walther v. Sovereign Bank*, 872 A.2d 735, 746 (Md. 2005) (noting the court "will not simply excise or ignore terms merely because . . . they may operate to the perceived detriment of the weaker party."). Additionally, the Court does not find the level of ambiguity that Buttacavoli does.

To require the degree of explicitness in a savings clause that Buttacavoli demands would render the entire post-employment restrictions section meaningless. Additionally, the Court finds a certain level of explicitness in the language of the savings clause when it states a term of application "for a period of two (2) years from the date of the termination of my employment." Reading the contract as a whole, it is unambiguous that the parties intended

the post-employment restrictions to continue for two years past the general termination of the contract.

*Prison Health Services* is distinguishable from this case. That case noted it was dealing with a unique animal in contract law, the option clause, which normally requires exercise before the contract expires. *Prison Health Servs.*, 912 A.2d at 61-62. The disputed section here is not an options clause, but a post-employment restriction, and thus the case is inapposite.

Buttacavoli further argues that comparisons of his Manager's Agreements to other employee contracts issued by Monumental reinforce his interpretation. But this reference to extrinsic evidence is improper where contract language is unambiguous. *Ocean Petroleum, Co. v. Yanek*, 5 A.3d 683, 690 (Md. 2010) (noting that, absent ambiguity, contract interpretation "requires us to restrict our inquiry to 'the four corners of the agreement.'"). The Court did not consider these other contracts, nor Buttacavoli's reference to settlement documents that he argues further contextualize the agreement.

Buttacavoli's Motion for Judgment on the Pleadings in respect to the Manager's Agreement is denied.

**B. Enforceability of the Sales Associate Agreement**

Buttacavoli asks for a judgment on the pleadings finding that the Sales Associate Agreement is unenforceable for lack of consideration. That contract was signed in January 2011 and

Buttacavoli was fired in June of the same year. He argues that, even in at-will employment situations, continuation of employment for a "substantial period of time" is required for a restrictive covenant to be supported by adequate consideration. Def.'s Mem. 5 (*citing Simko, Inc. v. Graymar Co.*, 464 A.2d 1104, 1107-1108 (Md. Ct. Spec. App. 1983)). What qualifies as a "substantial period is dependent on the facts and circumstances of a particular case." *Id*. at 1108.

Stated another way, bargaining in bad faith merely to secure a restrictive covenant, and then quickly terminating the employee, likely does not constitute adequate consideration. *Id.* at 1107-1108.

The Court reminds Buttacavoli that judgment on the pleadings is appropriate only where material facts are not in dispute. By the Maryland court's own language, determination of what constitutes a "substantial period" is dependent on facts. Here, the parties disagree on whether Monumental terminated Buttacavoli because he was violating the contract, or whether it was the end result of a bad-faith negotiation to secure his agreement to restrictive covenants. Rendering judgment on the pleadings would require the Court to decide that Buttacavoli's version of events are true. That the Court cannot do at this stage. Therefore, the Motion for Judgment on the Pleadings in regards to the 2011 Sales Associate Agreement is denied.

### C. Plaintiff's Motion for Sanctions

In arguing his position on the Manager's Agreement, Buttacavoli referenced settlement documents the parties exchanged prior to a settlement conference. Plaintiff asks for sanctions for violating Federal Rule of Evidence 408, Local Rule of Civil Procedure 83.5 and Magistrate Judge Geraldine Soat Brown's standing settlement conference order. The Court declines this invitation.

### IV. CONCLUSION

For the reasons stated herein, Defendant Buttacavoli's Motion for Judgment on the Pleadings is denied. Plaintiff's Motion for Sanction is also denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 11/19/2012